UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:

PARADISE PRODUCTIONS, LLC                                                      CASE NO. 12-52317
DEBTOR


PARADISE PRODUCTIONS, LLC                                                                PLAINTIFF

V.                                                                                      ADV. CASE NO. 12-5051

THOMAS CHALIN                                                                            DEFENDANT


## MEMORANDUM OPINION

This matter having come before the Court on the Plaintiff's and Defendant's Cross-Motions for Summary Judgment [Docs. 17 and 18], the Court having reviewed the record and considered arguments of counsel, shall, for the reasons set forth below, grant the Defendant's Motion for Summary Judgment.

### Facts

The following material facts have not been disputed. The Plaintiff, Paradise Productions, LLC ("Paradise"), owns a horse farm in Versailles. As of August 2012 the farm was in foreclosure, and a foreclosure sale was scheduled for September 7, 2012. On August 23, 2012, in an attempt to avoid that foreclosure, Paradise entered into a contract with the defendant, Thomas Chalin, to sell the farm to Mr. Chalin and lease it back from him.

The contract the parties entered into was a form fill-in-the-blanks "Uniform Real Estate Sales and Purchase Contract," prepared by the Lexington-Bluegrass Association of Realtors. As such, it contained a number of optional terms that buyers and sellers who use the form could incorporate in, or exclude from, their agreement.

Two provisions of the contract bear on this case – the inspections clause, and an addendum the parties added to the form.

1

The inspections clause, in relevant part, provides as follows:

(d) **OTHER INSPECTIONS** (CHECK ONE OF THE 3 CONDITIONS)

(1) ☐ The BUYER hereby agrees that he/she has inspected the property and hereby accepts the property and its improvements in its present "AS-IS" condition; with no warranties, expressed or implied, by SELLER and/or Realtors.

***OR***

(2) ☐ The BUYER hereby agrees that he/she has inspected the property and hereby accepts the property and its improvements in its present "AS-IS" condition; with no warranties, expressed or implied, by SELLER and/or Realtors. BUYER may have the property inspected and may declare the contract null and void by notifying SELLER or SELLER'S agent in writing within __ days from contract acceptance. Failure to have inspection and notify SELLER or SELLER's agent in writing within said time shall constitute a waiver of this inspection clause and an acceptance of the property in its "as-is" condition. The time frame established in this paragraph is an absolute deadline.

***OR***

(3) ☐ The BUYER accepts the property and its improvements in their "AS-IS" condition as stated here-in, except for the following inspections (mark on line FOLLOWING item): complete property ___; OR heating system ___; air conditioning system ___; plumbing ___; electrical systems ___; appliances ___; roof ___; structural ___; fireplace/chimney ___; septic system ___; well/cistern ___; radon ___; asbestos ___; swimming pool ___; hot tub/spa ___; lead paint ___; concrete ___; mold ___; others _____. Inspections are not to ascertain the cosmetic imperfections of the real property or personal property that the BUYER has already considered in determining the purchase price. The BUYER understands the SELLER is not required to bring property to the current building code. The BUYER understands that the SELLER is not required to perform the repairs listed in the inspector's report except as agreed in this subsection. **The BUYER understands and agrees that the inspector's report is not a repair list.**

The BUYER has carefully examined the premises and the improvements located thereon, and in making the decision to buy the property, the BUYER is relying wholly and completely upon BUYER's own judgment and the judgment of the BUYER's inspectors. BUYER understands that SELLER shall not be required to repair any defect disclosed on the Seller's Disclosure of Property Condition.

These inspections shall be ordered by the BUYER and paid for by the BUYER. These inspections must be performed and BUYER must submit in writing to SELLER or SELLER's agent, within ___ days of contract acceptance, a list of any repairs, from inspections report(s), needed to bring the inspected item(s) to their standard operating condition. A request for a monetary allowance without a list of repairs will not constitute compliance with this request. Failure to submit a list of repairs to SELLER or SELLER's agent in writing within said time shall constitute a waiver of

2

> this inspection clause and an acceptance of the property in its "as-is" condition. The time frame established in this paragraph is an absolute deadline.
>
> Repairs submitted in compliance with the paragraph above, shall be negotiated in good faith within four (4) days of Buyer submitting repairs to SELLER and/or SELLER's agent. If BUYER and SELLER cannot agree on repairs, this contract is voidable at the option of either party with earnest money refunded to BUYER. If upon failure to agree upon repairs, either party gives notice of intent to void the contract, then the other party shall, within three (3) days of receipt of notice have the right to: If SELLER, agrees to make the necessary repairs, **OR** if BUYER, accepts the property in its as-is condition.

To summarize, the first option envisions "as-is" acceptance, plain and simple. Under the third option, it was the opposite; the buyer could order any number of inspections, and was then obligated to negotiate with the seller over any repairs those inspections showed were needed. Only after good-faith negotiation of repairs could either party void the contract. The second option is a hybrid of the two; the buyer could have the property inspected, but only within a limited time period, at the end of which he was either required to void the contract or he would be deemed to have accepted the property "as-is". This second option was selected by the parties with a five day inspection/notice period (the "Inspection Clause").

The other provision of the contract that bears on this case is the Addendum the parties added to the form which provided, in part:

> 3. This contract is subject to all lien holders written approval of said contract and their agreement to release any mortgages existing against the property and cancellation of a Master Commissioner's sale of the property within five (5) days of contract acceptance or this contract is null and void with earnest money returned to the buyer and all parties signing a release to that effect. This contract is also subject to all lien holders written approval to release all obligations of the Seller, or any other party or guarantor, for any debt secured by a mortgage on the property, or such release as is acceptable to the Seller, any other party or guarantor, within five (5) days of contract acceptance, or this contract is null and void with earnest money returned to buyer and all parties signing a release to that effect.

On August 21, two days before Paradise and Mr. Chalin signed the contract, counsel for Paradise emailed counsel for Paradise's mortgagee, Town & Country Bank and Trust, stating that Paradise had an offer to purchase the farm for $1.75 million and inquiring whether Town & Country would "agree to accept that figure in satisfaction of the debts." The contract was not

3

attached to that email, and it is undisputed that the contract itself was never sent to Town & Country for its approval. Counsel for the bank replied, writing that it would "release [its] mortgages for $1,750,000.00." However, counsel cautioned it would "need a strong commitment letter, large down payment, and for it to close before the auction date." Finally, counsel advised that Town & Country would not hold off on the foreclosure sale "based on a contract with large contingencies or escrows."

On August 28, five days after Paradise and Mr. Chalin signed the contract, counsel for Mr. Chalin informed Paradise by fax that Mr. Chalin had "elected to declare the contract null and void pursuant to [the Inspection Clause]." The letter made no mention of an inspection or its results, but it is undisputed that Mr. Chalin did obtain an inspection in the days between contract formation and his letter voiding the contract, and that employees of Paradise knew of the inspection. Four days after notifying Paradise of his intention to void the contract, Mr. Chalin made an offer for less money and a shorter lease term, but that offer was not accepted, and Paradise filed a petition under Chapter 12 shortly thereafter to avoid foreclosure.

Two months later, Paradise filed this adversary proceeding, claiming that Mr. Chalin breached the August 23 contract under Kentucky law and seeking a judgment compelling specific performance of that contract. Paradise filed a Motion for Summary Judgment on January 21, 2013 [Doc. 16, amended by Doc. 18]; Mr. Chalin filed a Motion for Summary Judgment on January 21, 2013 as well [Doc. 17]. The cross-motions are now ripe for this court's decision.

## Jurisdiction

Before addressing the merits of these motions, we pause to address our jurisdiction. The district courts have original but not exclusive jurisdiction, pursuant to 28 U.S.C. § 1334(b), over civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). The district courts have the power to refer bankruptcy cases and civil

4

proceedings which arise in the Bankruptcy Code and those related to bankruptcy cases to the bankruptcy courts. 28 U.S.C. §157(a). In Kentucky, the district court has referred such cases to the bankruptcy court. LR 83.12. In non-core proceedings that are only related to a case under title 11, bankruptcy courts may only enter final judgment with the consent of the parties; without that consent, they may only enter proposed findings of fact and conclusions of law. 28 U.S.C. §§ 157(c)(1) and (2).

The parties dispute whether this suit is a core proceeding. Paradise stated in its complaint that its suit was a core proceeding, particularly relying on 28 U.S.C. § 157(b)(2)(N), which designates as core proceedings "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." However, what Paradise seeks is not an order approving the postpetition sale of its property, as subsection (N) contemplates, but rather, an order ordering a third party to purchase Paradise's property pursuant to a prepetition purchase agreement. This is not a core proceeding.[1] It is, however, "related to" Paradise's bankruptcy case, because its outcome "could conceivably have [an] effect on the estate being administered in bankruptcy." *In re Dow Corning Corp.*, 86 F.3d 462, 469 (6th Cir. 1996) (internal citation omitted) (internal quotation marks omitted). The parties have expressly consented to this court's entering final judgment; thus, this court may enter final judgment notwithstanding the non-core status of this proceeding.[2] Venue is proper in this Court pursuant to 28 U.S.C. §1409.

## Analysis

Although the parties discussed both the Inspection Clause and Addendum in their briefs, because the analysis of the Inspection Clause will dispose of this matter, it will be unnecessary to address the parties' performance under the Addendum.

---

[1] Paradise also relies on 28 U.S.C. §§ 157(b)(2)(L) and 157(b)(2)(M), respectively designating "confirmations of plans" and "orders approving the use and lease of property, including the use of cash collateral" as core proceedings, but these are even further removed from the relief Paradise seeks.
[2] Mr. Chalin has filed a motion to withdraw the reference that is pending before the District Court, claiming he is entitled to a jury trial should the matter proceed to trial.

Paradise claims that Mr. Chalin breached the August 23 contract by not providing, in his notice of cancellation, written notice of the inspection he obtained and its results. In Paradise's view, the Inspection Clause that the parties chose unambiguously requires written notice, not only of the intent to cancel, but of the inspection. In reaching that conclusion, Paradise relies on the sentence of the provision stating that "[f]ailure to have inspection and notify SELLER or SELLER'S agent in writing . . . shall constitute a waiver of this inspection clause and an acceptance of the property in its as-is condition." Paradise further argues that the right to terminate after inspection could only be exercised upon discovery of a latent defect. It bases this argument on the first sentence of the Inspection Clause, which avows that the buyer has already inspected the property and accepted it in "as-is" condition. The only way that this sentence can be given meaning, Paradise argues, is if the right to terminate after further inspection is confined to the discovery of latent defects not discovered in an initial inspection.

Conversely, Mr. Chalin argues that the Inspection Clause does not require discovery of a latent defect, nor written notice of an inspection. All that need occur for termination to be proper, Mr. Chalin argues, is an inspection and written notice of cancellation. Mr. Chalin rests his reading of the provision on the sentence, "BUYER may have the property inspected and may declare the contract null and void by notifying SELLER or SELLER'S agent in writing"; he argues that this language plainly shows that all the seller must be notified of is cancellation. Second, in response to Paradise's argument that a latent defect requirement is needed to give the language regarding "as-is" acceptance meaning, Mr. Chalin contends the "as-is" acceptance is only effective <u>after</u> the time to inspect the property and void the contract expires. Finally, Mr. Chalin argues that Paradise voided the contract by failing to satisfy any of the conditions precedent listed in the Addendum.

Both Paradise and Mr. Chalin seek summary judgment. "Summary judgment is appropriate if . . . there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law. A genuine issue of material fact exists when there are

6

disputes over facts that might affect the outcome of the suit." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (internal quotation marks omitted) (citations omitted).

Under Kentucky law, the "construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (internal quotation marks omitted) (citations omitted). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks omitted) (citations omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal*, 325 S.W.3d at 298 (internal quotation marks omitted) (citations omitted). Finally, "once a court determines that a contract is ambiguous," "a court may consider parol and extrinsic evidence." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002).

On the two points of the contract that the parties dispute, to-wit: whether the Inspection Clause required (a) written notice of an inspection and (b) discovery of a latent defect (and written notice thereof), the Court finds that the contract is unambiguous; a reasonable person would find it susceptible to only one interpretation on these points. First, on whether the clause required written notice of the inspection, the provision plainly states what the notice must contain. The clause provides that "BUYER may have the property inspected and may declare the contract null and void by notifying SELLER or SELLER'S agent in writing." The buyer must inspect the property to exercise his right to void the contract under the Inspection Clause, but the agreement only requires the buyer to give the seller notice of his intent to "declare the contract null and void." The next sentence, it is true, less artfully provides that "[f]ailure to have inspection and notify SELLER or SELLER'S agent in writing within said time shall constitute a

7

waiver of this inspection clause." If this sentence stood alone and was the only thing the clause said about notice, the clause could be deemed ambiguous as to what must be included in the seller's notice. However, the first sentence sets forth the notice requirement; the next sentence only provides the consequences of not fulfilling the notice requirement. Read in context, the second sentence simply means that failure to have an inspection and notify the seller of the intent to cancel shall constitute a waiver of the Inspection Clause.

As to whether the Inspection Clause requires discovery of a latent defect, the express terms of the clause say nothing about what the buyer need discover to void the contract – notably so in comparison to the third optional inspection clause on the Lexington-Bluegrass form (which the parties did *not* choose), which required the buyer to engage in good faith negotiations with the seller over the cost of necessary repairs discovered by the inspections before cancelling the contract. "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible," *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986), and here, the rejected third inspection option helps clarify, if clarification were needed, that the second clause (agreed to by the parties) did not require discovery of a latent defect. Rather, the second clause plainly and unambiguously provides that the buyer may conduct an inspection and void the contract within five days.

Paradise's contention that a latent defect requirement must be implied to give meaning to the language in the clause professing the buyer's having already inspected the property and accepted it in "as-is" condition is without merit. Clearly, the "as-is" acceptance language is to be read as not going into effect until the five-day inspection period expires, at which point the buyer, if he has not inspected and voided the contract, has *then* accepted the property in "as-is" condition. And that is just what the clause says: "Failure to have inspection and notify SELLER or SELLER'S agent in writing within said time shall constitute a waiver of this inspection clause and an acceptance of the property in its 'as-is' condition."

8

Finally, Paradise argues that Mr. Chalin breached his duty of good faith by exercising his termination right, without good cause, in order to obtain the property at a cheaper price. The Kentucky Supreme Court has rejected just this sort of bad faith claim. While there is, "[w]ithin every contract . . . an implied covenant of good faith and fair dealing," which "impose[s] on the parties thereto a duty to everything necessary to carry them out . . . [a]n implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights." *Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). Here, Mr. Chalin merely exercised his contractual rights.

Because the contract unambiguously reads as contended by Mr. Chalin, the Court may not and does not consider evidence outside the four corners of the contract. There are, therefore, no genuine disputes of material fact, and Mr. Chalin is entitled to judgment as a matter of law. As a result, it is not necessary to address Mr. Chalin's defense that Paradise voided the contract by not satisfying the conditions precedent in the Addendum.

The foregoing constitutes the Court's findings of fact and conclusions of law. A separate judgment shall be entered.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge
Dated: Monday, April 29, 2013
(tnw)**